**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| OSCAR GARNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:21-CV-0004 JAR |
| | ) |
| DR. UNKNOWN WALKER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Oscar Garner an inmate at St.

Charles County Department of Corrections, for leave to commence this action without payment of

the required filing fee. For the reasons stated below, the Court will deny plaintiff's request to

proceed in forma pauperis. *See* 28 U.S.C. § 1915(g). Furthermore, after reviewing the complaint,

the Court will dismiss the complaint pursuant to 28 U.S.C. § 1915(g). Alternatively, plaintiff's

complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(e)

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma

pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An

action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S.

319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible

claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff, Oscar Garner, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at the St. Charles County Jail. He names the following individuals as defendants in this action: Dr. Unknown Walker; Jane Doe Nurse; Jandi (Unknown) Medical Director; and Daniel Keen (Jail Administrator). Plaintiff sues defendants in their individual and official capacities.

Plaintiff asserts that he arrived at St. Charles County Jail on October 29, 2020. He claims that at intake he spoke to an unnamed nurse to explain that he suffered from "lactose intolerance" and purportedly had "irritable bowel syndrome." He asserts that he told the nurse that both issues "needed to be treated' with a diet. Plaintiff states that he was told by the intake nurse that he would have to see the doctor. Plaintiff does not explain how he knew he suffered from "irritable bowel

syndrome" and "lactose intolerance." Plaintiff does not indicate if he was officially diagnosed by a medical provider previously with these two issues, or if he had "self-diagnosed" previously based on his own prior experiences. Plaintiff also does not explain whether he had an actual "allergy" to dairy or if he simply preferred not to eat dairy because of the way it made him feel after he ate it.

Plaintiff states that on November 9, 2020, he spoke with Nurse Jessica when she came to his housing unit. He allegedly asked Nurse Jessica when he would be able to see the doctor about his "irritable bowel syndrome" because he was "starting to have problems." He states that he also asked if he could "receive a non-dairy diet tray." Plaintiff alleges that he was told that he would have to be treated by the doctor once he was off quarantine because the doctor was not entering the building until all the inmates were cleared of COVID-19.

Plaintiff alleges that on November 17, 2020, a nurse came to his housing unit to examine his knee and spoke to him about prescribing prednisone, presumably for the swelling and pain in his knee. He claims that at that time he purportedly told the nurse that he suffered from "severe lactose intolerance" and had "irritable bowel syndrome." Plaintiff asserts that he told the nurse that he was not receiving a non-dairy diet which caused him to allegedly have a Vitamin-D deficiency. Plaintiff does not indicate why he believes he had a Vitamin D deficiency. Plaintiff also does not state that he was tested by a medical professional to see if he had a deficiency. It appears that plaintiff simply presumed he had a deficiency.

Plaintiff allegedly told the nurse that if he ate food that had dairy in it, it could cause diarrhea, nausea, vomiting and constipation, as well as hemorrhoids. Plaintiff asserts that he sought pain medication from the nurse called Tramadol, as well as Phenergan for his nausea.[1] Plaintiff claims he explained to the unnamed nurse that he was not getting 2000 calories a day due to his

---

[1]Plaintiff states that he takes these prescriptions "on the street" for his irritable bowel syndrome. Plaintiff does not indicate who provided him with these medications previously.

lactose intolerance and irritable bowel syndrome. He alleges that the unnamed nurse told him that "we don't treat people at St. Charles Jail for that, however, you will have to wait to see the doctor." She then told him he was on the list to see the doctor.

Plaintiff asserts that when Nurse Michael was doing "night meds" on November 18, 2020, he again asked about being seen for "lactose intolerance" and for "irritable bowel syndrome." He claims that he told Nurse Michael that he was in pain and he needed his medication. Plaintiff states that Nurse Michael told him that "they don't treat that nor give that medication out, however, you will need to speak to the doctor."

Plaintiff states that on December 1, 2020, Nurse Dean came to his unit to give him a COVID-19 vaccine. He claims he told Nurse Dean that he was in pain and needed medication because he was not able to eat all his food due to his "lactose intolerance" and "irritable bowel syndrome." Plaintiff states that Nurse Dean stopped him while he was talking and told him he would need to speak to the doctor. Plaintiff states that he again attempted to speak to an unnamed nurse about receiving medication about "lactose intolerance" and "irritable bowel syndrome" on December 4, 2020, and he was again told he would have to speak to the doctor.

Plaintiff claims that on December 15, 2020, he was finally able to speak to Dr. Walker regarding a knee issue, "irritable bowel syndrome," and "severe lactose intolerance." Plaintiff claims that while he was waiting in the exam room, he overheard Nurse Jane Doe state, "Garner is next to see you for his right knee, irritable bowel syndrome and severe lactose intolerance, but we don't treat irritable bowel or lactose intolerance and we do not give out non-dairy diets."

Plaintiff states that he asserted to Jane Doe Nurse, "Why am I telling you and/or the doctor what is wrong if you have already told the doctor St. Charles don't treat irritable bowel syndrome or severe lactose intolerance?" He claims that Jane Doe Nurse told him, "You didn't hear all of what I said."

Plaintiff states that he explained to Dr. Walker that he needed Vitamin D because of what he perceived to be a Vitamin D deficiency. He asserts that he told Dr. Walker that he had "severe lactose intolerance" and "irritable bowel syndrome." Plaintiff does not explain what exactly he told Dr. Walker relative to his claims of "irritable bowel syndrome" or "lactose intolerance."

Plaintiff claims he told Dr. Walker that he had been incarcerated at St. Charles County Jail since October 229, 2020 without what he "his medication." Presumably, plaintiff is referring to the medication he was taking "on the street," such as Phenergan for nausea, Tramadol for pain and a different medication for constipation.

Plaintiff purportedly told Dr. Walker that he needed a non-dairy diet because he was "messed up." Plaintiff does not go into detail in his complaint as to what he meant by "messed up." However, both a "white shirt" and Jane Doe Nurse were standing in the door and stated, "We don't treat that at St. Charles County Jail nor do we give out non-dairy trays."

Plaintiff states that the doctor agreed that plaintiff "needed the items," although plaintiff does not state which items that Doctor Walker specifically agreed he needed. For example, plaintiff does not indicate whether he was, in fact, prescribed Tramadol, Phenergan, or something for constipation. Plaintiff also does not state whether the doctor agreed that plaintiff should receive a non-dairy diet. Plaintiff merely states that the doctor claimed, "there was nothing she could do."

Plaintiff asserts that he asked the doctor what he should do relative to the problems he was having and both Doctor Walker and Jane Doe said they didn't know. Plaintiff claims that the doctor then examined his knee, and he was taken back to his holding cell.

Plaintiff asserts that Nurse Jandi has told him, at the kiosk and in person, that St. Charles County Jail does not treat "irritable bowel syndrome" nor "severe lactose intolerance" and does not provide non-dairy medical trays. He states that he was told by Nurse Jandi at an unnamed time

that he would not be getting a non-dairy medical tray. Plaintiff does not go into detail how and when his talks with Nurse Jandi occurred.

Plaintiff claims that if he does not eat the dairy on the food trays provided to him at St. Charles County Jail he does not receive a 2000 calorie diet. Ha also asserts in a conclusory fashion that "lactose intolerance" and "irritable bowel syndrome" are serious medical needs that need to be treated.

Plaintiff further alleges that if defendants had given him a blood test, it is more than likely that defendants would have found that plaintiff was deficient in Vitamin D. He claims that unnamed defendants refuse to take his blood and test for Vitamin D deficiency. However, plaintiff does not indicate that he asked any of the named defendants to take a blood test or that he told Doctor Walker that he believed he was deficient in Vitamin D.[2]

The Court notes that although plaintiff insists that by avoiding dairy on his food tray, he is not consuming a 2000 calories diet, he has not indicated that he has suffered from weight loss. Rather, he states that 'upon information and belief" he believes he may have lost weight. However, he notes that he was 180 pounds at the time he entered St. Charles County Jail, but he has not alleged his current weight in his complaint.[3]

Additionally, plaintiff has also not indicated that he is being denied adequate nutrition because of avoiding dairy on his food tray.

Plaintiff seeks monetary damages and injunctive relief.

---

[2]To state a claim for denial of medical care, plaintiff must allege that a specific defendant denied him a requested treatment or medical test. Plaintiff has not stated that he sought a test for Vitamin D deficiency from one of the named defendants and was denied such a test.

[3]Plaintiff's conclusory assertions "upon information and belief" that he may have lost weight are not entitled to an assumption of truth. *See Iqbal,* 556 U.S. 662, 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

**Discussion**

**A. Plaintiff's Claims Are Subject to Dismissal Under 28 U.S.C. § 1915(g)**

According to the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner's ability to proceed in forma pauperis is limited if he has filed at least three actions that have been dismissed as frivolous, malicious, or for failure to state a claim. 28 U.S.C. § 1915(g). Section 1915(g) provides in relevant part:

> In no event shall a prisoner bring a civil action … under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action … in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Section 1915(g) is commonly known as the "three strikes" rule, and it has withstood constitutional challenges. *See Higgins v. Carpenter*, 258 F.3d 797, 799 (8th Cir. 2001). Plaintiff has accumulated more than three strikes. *See Garner v. Hill*, No. 17-cv-51 (E.D. Wis. filed Jan. 13, 2017) (dismissal for failure to state a claim); *Garner v. Kirby*, No. 14-cv-54 (W.D. Wis. filed Aug. 5, 2014) (dismissal for factual frivolousness); *Garner v. Huibregtse*, No. 09-cv-301 (W.D. Wis. filed May 12, 2009) (dismissal for failure to state a claim based on res judicata); *see also, Garner v. Esser*, No. 17-cv-561 (E.D.Wis. filed July 20, 2017) (discussing plaintiff's strikes). Accordingly, plaintiff is subject to the three strikes provision of 28 U.S.C. § 1915(g). As such, he may not continue to proceed in forma pauperis in this action unless the allegations in the amended complaint show he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

The Court has reviewed the allegations contained in plaintiff's complaint and finds that plaintiff has not alleged in his pleading that he was under imminent danger of serious physical injury at the time of filing his complaint. Rather, the allegations in his complaint assert that he believes that he is suffering from "irritable bowel syndrome" and "lactose intolerance," and he

complains that he is not able to get a non-dairy dietary tray. These allegations do not establish that he is in imminent danger of serious physical injury.

In deciding that plaintiff is not in danger of imminent physical injury, the Court considers that plaintiff does not claim (by other than a conclusory statement) that he has lost weight because of avoiding dairy on his food trays, nor does he indicate that he has been tested by a medical professional and found to be deficient in nutrients. Here, the ongoing symptoms plaintiff describes amount merely to discomfort or inconvenience, not serious physical injury. Accordingly, pursuant to 28 U.S.C. § 1915(g), he may not continue to proceed in forma pauperis in this action. The Court will therefore deny plaintiff's request to proceed in forma pauperis and dismiss this action without prejudice to the filing of a fully-paid complaint.

"[A]n otherwise ineligible prisoner is only eligible to proceed in forma pauperis if he is in imminent danger *at the time of filing*. Allegations that the prisoner has faced imminent danger in the past are insufficient to trigger this exception to § 1915(g) and authorize the prisoner to pay the filing fee on the installment plan." *Ashley v Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (emphasis in original).

**B. Plaintiff's Claims are Subject to Dismissal Under 28 U.S.C. § 1915(e)(2)(B)**

Even if plaintiff were permitted to proceed in forma pauperis, this action would be dismissed. In the complaint, plaintiff brings this action against Daniel Keen (Jail Administrator at St. Charles County Jail), Dr. Unknown Walker, Jane Doe Nurse and Nurse Jandi (Medical Director), in both their individual and official capacities. Plaintiff's allegations fail to state a claim against any of the named defendants.

**1. Official Capacity Claims against Defendants Are Subject to Dismissal**

Plaintiff's official capacity claims against defendants are subject to dismissal. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself."

*See White v. Jackson*, 865 F.3d 1064, 1075 (8ᵗʰ Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8ᵗʰ Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8ᵗʰ Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8ᵗʰ Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8ᵗʰ Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Defendants are alleged to be employed by the St. Charles County Jail. Accordingly, plaintiff's official capacity claims are actually against their employer, St. Charles County. A local governing body such as St. Charles County can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the municipality's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8ᵗʰ Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8ᵗʰ Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Charles County.

First, plaintiff can show that St. Charles County had an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8ᵗʰ Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d

841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible...for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim against St. Charles County by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an

unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, there are no facts supporting the proposition that plaintiff's constitutional rights were violated due to an unconstitutional policy or custom. He has failed to articulate any unconstitutional policy or custom allegedly implemented by defendants. He also fails to present any facts indicating that St. Charles County failed to train its employees.

Instead, plaintiff's complaint focuses on his inability to get a non-dairy tray during October through November of 2020 at the St. Charles County Jail. The Court, however, cannot infer the existence of an unconstitutional policy or custom from the failure to serve plaintiff a non-dairy tray, which also occurred to everyone else within the Jail if they asked for such a tray.

Additionally, plaintiff's failure to articulate exactly which policy or custom was violative of the constitution is fatal to his claim for relief.

As such, plaintiff's official capacity claims against defendants must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

## 2. The Complaint Lacks Specific Allegations Against Jail Administrator Daniel Keen

Plaintiff has named as a defendant in this action Jail Administrator Daniel Keen. However, plaintiff has failed to make any specific allegations against defendant Keen. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

In the instant action, plaintiff has not set forth any facts indicating that Daniel Keen was directly involved in or personally responsible for the alleged violations of his constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted. See also *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord,* 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).

### 3. The Complaint Fails to State a Claim for Deliberate Indifference to Serious Medical Needs Against Dr. Walker, Nurse Jandi and Jane Doe Nurse

There is nothing, per se, unconstitutional about failing to serve inmates who have "self-diagnosed" themselves as lactose intolerant a non-dairy food tray. The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from deliberate indifference to their serious medical needs. *Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012). To survive initial review, a plaintiff must plead facts sufficient to state a plausible claim for deliberate indifference to serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Camberos v. Branstad,* 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle,* 429 U.S. at 106. Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference to a prisoner's serious medical needs. *Jones v. Minnesota Dep't of Corr.,* 512 F.3d 478, 482 (8th Cir. 2008). Instead, a prisoner plaintiff must allege that he suffered objectively serious medical needs and that the defendants actually knew of, but deliberately disregarded those needs. *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997).

A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner,* 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

A prisoner may show a deliberate indifference through an intentional delay in or denial of access to medical care. *Estelle,* 429 U.S. at 104-05.

An **allergy** to milk is obviously a serious health need. However, plaintiff has not stated that he had an allergy to milk. He has alleged a "lactose intolerance." *See Obataiye-Allay v. Clarke,* No. 7:15CV00350, 2016 WL 4197607, at *2-3 (W.D. Va. Aug. 8, 2016) (concluding that failure to provide a special diet to inmates who had lactose intolerance, but not a true dairy allergy, did not violate the Eighth Amendment).[4] *See Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977) (The right to medical care is limited to treatment that is medically necessary and not that "which may be considered merely desirable.").

Furthermore, plaintiff has not stated that his "irritable bowel syndrome" was left untreated, separate, and apart from the "lactose intolerance" once he was able to see Dr. Walker after the COVID-19 restrictions were lifted in the St. Charles County Jail. Specifically, plaintiff has not alleged that he was denied medications for his "irritable bowel syndrome," such as the Phenergan, Tramadol and/or medications for constipation that he received "on the street."

For these reasons, the Court finds that plaintiff's claims against Dr. Walker, Nurse Jandi and Jane Doe Nurse fail to state a claim upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **DENIED** pursuant to 28 U.S.C. § 1915(g).

---

[4] Although prisons must provide nutritionally adequate food to its inmates, plaintiff has not alleged that he was substantially deprived of food. *Laufgaus v. Speziale,* 263 Fed. App'x 192, 198 (3d Cir.2008) (non-precedential). Rather, he has alleged in a conclusory manner that he believes he is not receiving a 2000 calorie diet when he avoids the dairy products on his tray. Nonetheless, he has not alleged, with anything other than a conclusory statement, that he has lost weight or indicated that medical professionals have found him to be nutritionally deficient in his diet. *See Laurensau v. Romarowics,* 528 F. App'x 136, 139–40 (3d Cir.2013) (finding that allegations of a modified diet do not rise to the level necessary to support a claim of an Eighth Amendment violation).

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice to being re-filed upon payment of the filing fee. *See* 28 U.S.C. § 1915(g). A separate Order of Dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that, alternatively, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal of this action would not be taken in good faith.

Dated this 2nd day of September, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE