# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| OSCAR GARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-0004 JAR |
| | ) | |
| DR. UNKNOWN WALKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of plaintiff's amended complaint. Plaintiff, Oscar Garner, an inmate at St. Charles County Department of Corrections moves to proceed in forma pauperis in this action.[1] Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $1.00. Furthermore, the Court will dismiss plaintiff's claims against Daniel Keen in his individual capacity. The Court will issue process against defendants Dr. Unknown Walker, Jane Doe Nurse and Nurse Jandi in their individual capacities and against Daniel Keen in his official capacity.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account,

---

[1]The Court initially denied plaintiff's motion for leave to proceed in form pauperis and dismissed this action pursuant to 28 U.S.C. § 1915(g) on September 2, 2021. However, the Court reconsidered its decision on October 29, 2021 and allowed plaintiff to file an amended pleading on November 12, 2021. In the order reconsidering the decision, the Court found that plaintiff's allegations that his lactose intolerance and irritable bowel syndrome were diagnosed by a doctor, as well as his allegations that he had lost over thirty (30) pounds during his incarceration at St. Charles County Department of Corrections, could be used to establish imminent danger as an exception to 28 U.S.C. § 1915(g).

or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## 28 U.S.C. § 1915(e)

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted.  An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense.  *Id*. at 679.  The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### The Amended Complaint

Plaintiff, Oscar Garner, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at the St. Charles County Department of Corrections. He names the following individuals as defendants in this action: Dr. Unknown Walker; Jane Doe Nurse; Nurse Jandi (Unknown) Medical Director; and Daniel Keen (Jail Administrator). Plaintiff sues defendants in their individual capacities. He also sues defendant Keen in his official capacity.

Plaintiff asserts that he arrived at St. Charles County Jail on October 29, 2020. He asserts that at the time he was taken into the St. Charles County Department of Corrections he weighed 180 pounds.

Plaintiff alleges that at intake he spoke to an unnamed nurse to explain that he suffered from "lactose intolerance" and "irritable bowel syndrome." He asserts that he told the nurse that both issues "needed to be treated along with a diet." Plaintiff states that he was told by the intake nurse that he would have to see the doctor and she would put him on the list to see the doctor.

Plaintiff states that on November 9, 2020, he spoke with Nurse Jessica when she came to his housing unit. He allegedly asked Nurse Jessica when he would be able to see the doctor about his "irritable bowel syndrome" because he was "starting to have problems" such as diarrhea, constipation, stomach pain and blood in his stool from "probably hemorrhoids" and need a non-dairy tray. Plaintiff alleges that Jessica told him he would have to be treated by the doctor once he was off quarantine.

Plaintiff alleges that on November 17, 2020, a nurse came to cell to examine his knee and spoke to him about prescribing prednisone, presumably for the swelling and pain in his knee. He claims that at that time he purportedly told the nurse that he suffered from "lactose intolerance (severe)" and had "irritable bowel syndrome." Plaintiff states that he told the nurse that he was not receiving a non-dairy diet nor Vitamin D pills, 2000 I.U., which causes him to be Vitamin D deficient.

Plaintiff allegedly told the nurse that if he ate food that had dairy in it, it caused diarrhea, nausea, vomiting and on and off constipation, as well as hemorrhoids. Plaintiff asserts that he told her that since being incarcerated at St. Charles County Department of Corrections he had not received his medication for pain, Tramadol, nor Phenergan for nausea. Plaintiff claims he explained to the unnamed nurse that he was not getting 2000 calories a day due to his lactose intolerance and irritable bowel syndrome and that he had lost almost twenty (20) pounds (at the time he spoke to the nurse) due to his limited caloric intake and not receiving his medication. He alleges that the unnamed nurse told him that "we don't treat people at St. Charles Jail for that, however, you will have to wait to see the doctor." She then told him he was on the list to see the doctor.

Plaintiff asserts that when Nurse Michael was doing "night meds" on November 18, 2020, he again asked about being seen for "lactose intolerance" and for "irritable bowel syndrome." He

claims that he told Nurse Michael that he was in pain and he needed his medication. Plaintiff states that Nurse Michael told him that "they don't treat that nor give that medication out, however, you will need to speak to the doctor."

Plaintiff states that on December 1, 2020, Nurse Dean came to his unit to give him a COVID-19 vaccine. He claims he told Nurse Dean that he was in pain and needed medication because he was not able to eat all his food due to his "lactose intolerance" and "irritable bowel syndrome." Plaintiff states that Nurse Dean stopped him while he was talking and told him he would need to speak to the doctor, although "they don't treat them issues" at St. Charles County Jail that she was aware. Plaintiff states that he again attempted to speak to an unnamed nurse about receiving medication about "lactose intolerance" and "irritable bowel syndrome" on December 4, 2020, and he was again told he would have to speak to the doctor.

Plaintiff claims that on December 15, 2020, he was finally able to speak to Dr. Walker regarding a knee issue, "irritable bowel syndrome," and "severe lactose intolerance." Plaintiff claims that while he was waiting in the exam room, he overheard Nurse Jane Doe state, "Garner is next to see you about his right knee and irritable bowel syndrome and severe lactose intolerance, but we don't treat irritable bowel syndrome nor lactose intolerance and we don't give out non-dairy trays at St. Charles County Jail." Plaintiff states that he told the nurse, "Why am I telling you and/or the doctor what is wrong, and you have already told the doctor St. Charles don't treat irritable bowel syndrome or severe lactose intolerance?" Jane Doe stated, "You didn't hear all of what I said."

Plaintiff states that he told Dr. Walker that he had been born with lactose intolerance and while in prison in Wisconsin, Dr. Paul Sumnicht diagnosed him with irritable bowel syndrome and severe lactose intolerance. Plaintiff alleges that he also told Dr. Walker that he took a "breath test" at U.W. Hospital, needed to diagnose lactose intolerance, and when he was out of prison, he had

been taking 2000 I.U. of Vitamin D, as well as Tramadol, Phenergan, Reguloid, as well as using hemorrhoid ointment.

Plaintiff claims he told Dr. Walker that he had been incarcerated at St. Charles County Jail since October 29, 2020 without his medication, and he had been experiencing constipation and/or diarrhea, along with pain and nausea, since he began eating the food at St. Charles County Department of Corrections. Plaintiff claims that Dr. Walker initially agreed to prescribe Vitamin D to plaintiff but told him, "I am unable to give you the rest of the medication you were on before coming to jail. You are going to have to put in a grievance because you might need the other medications since they don't treat irritable bowel syndrome nor severe lactose intolerance."

Plaintiff alleges that Jane Doe Nurse was standing in the door and stated to Dr. Walker, "He cannot receive Vitamin D 2000 I.U. We don't give that out." Plaintiff asserts that Jane Doe Nurse then looked at him and said to Dr. Walker, "We'll talk about that later." Plaintiff claims that he left the examination room without any treatment for his irritable bowel syndrome or severe lactose intolerance.

Plaintiff asserts that he complained to the Medical Director at St. Charles County Department of Corrections, Nurse Jandi, regarding his lack of treatment for his irritable bowel syndrome and lactose intolerance. He allegedly told her that he was being denied medication of Tramadol, Phergan, Reguloid, Vitamin D 2000 I.U., as well as hemorrhoid ointment. Plaintiff asserts that Nurse Jandi told him, "We don't treat irritable bowel syndrome or severe lactose intolerance."

Plaintiff claims that there is a policy at the St. Charles County Department of Corrections that an inmate can't be treated for symptoms of severe lactose intolerance and/or irritable bowel syndrome nor provide non-dairy diets. Plaintiff believes that this policy comes from Daniel Keen, the Jail Administrator. Plaintiff does not provide any information relative to his belief that

defendant Keen put in place such a policy other than his belief that Keen "is in charge of all official rules of the jail."

Plaintiff claims that most of the food trays in St. Charles County Department of Corrections have dairy on them, and he is forced to choose whether to eat dairy and be in pain or receive less than a 2000 calorie per day diet. Although he has asked for, and been denied a non-dairy tray, he claims that others at the Jail have been given non-dairy trays.

Plaintiff also claims that he is being denied medication to treat his constipation and diarrhea, as well as his pain and nausea from both lactose intolerance and irritable bowel syndrome. He asserts that he is also deficient in Vitamin D, and he has not been given Vitamin D supplements despite his complaints.

Additionally, plaintiff complains that he has lost over thirty (30) pounds since his intake into St. Charles County Department of Corrections on October 29, 2020. He asserts that he weighed 180 pounds when he was admitted to the Jail. However, as of the date he signed the amended complaint in this matter, October 22, 2021, he weighed 159 pounds.

Last, plaintiff asserts that there is a policy or practice of denying inmates treatment for lactose intolerance and/or treatment for irritable bowel syndrome and/or a non-dairy tray when necessary.

Plaintiff seeks monetary damages and injunctive relief.

## Discussion

### A.  The Court will Issue Process Against Daniel Keen In His Official Capacity

In the amended complaint, plaintiff brings this action against Daniel Keen (Jail Administrator at St. Charles County Department of Corrections) in his official capacity.

Plaintiff claims that there is a policy at the St. Charles County Department of Corrections that an inmate can't be treated for symptoms of severe lactose intolerance and/or irritable bowel

syndrome nor provide non-dairy diets. Plaintiff believes that this policy comes from Daniel Keen, the Jail Administrator.

Plaintiff does not provide any direct evidence relative to his belief that defendant Keen put in place such a policy other than his belief that Keen "is in charge of all official rules of the jail." Plaintiff has provided some circumstantial evidence that there was a policy to deny inmates from receiving treatment as well as non-dairy trays, indicating that Dr. Walker told him that he was unable to give him medicine for his lactose intolerance and irritable bowel syndrome due to a policy not to treat such conditions. Additionally, plaintiff indicates that both Nurse Jandi and Jane Doe Nurse told him that non-dairy trays were not provided, and that no treatment was provided for irritable bowel syndrome and lactose intolerance.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Daniel Keen is employed by the St. Charles County Department of Corrections Accordingly, plaintiff's official capacity claims are against their employer, St. Charles County. A local governing body such as St. Charles County can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of

claim, the plaintiff must establish the municipality's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Charles County.

First, plaintiff can show that St. Charles County had an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Plaintiff alleges that defendants had a "policy" of denying treatment for irritable bowel syndrome and lactose intolerance, as well as non-dairy diets. However, the Court believes he is referring to a custom of doing so.

Plaintiff can establish a claim of liability based on an unconstitutional "custom." To do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

The Court believes that plaintiff's allegations suffice to state a claim for an unconstitutional custom or policy under 28 U.S.C. § 1915. Thus, the Court will issue process on Daniel Keen in his official capacity as to plaintiff's claim.

## B. Plaintiff's Individual Capacity Claim Against Jail Administrator Daniel Keen is Subject to Dismissal

Plaintiff has brought a claim against Jail Administrator Daniel Keen in his individual capacity. However, plaintiff has failed to make any specific allegations against defendant Keen, *i.e.*, something specific that Keen allegedly did to plaintiff to violate his Constitutional rights. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

In the instant action, plaintiff has not set forth any facts indicating that Daniel Keen was directly involved in or personally responsible for the alleged violations of his constitutional rights.

As a result, the complaint fails to state a claim upon which relief can be granted. *See also Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983). Thus, the Court will dismiss plaintiff's claims against defendant Keen in his individual capacity.

### C. The Court will issue Process for Deliberate Indifference to Serious Medical Needs Against Dr. Walker, Nurse Jandi and Jane Doe Nurse

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from deliberate indifference to their serious medical needs. *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012). To survive initial review, a plaintiff must plead facts sufficient to state a plausible claim for deliberate indifference to serious medical needs. *See Estelle v.Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference to a prisoner's serious medical needs. *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008). Instead, a prisoner plaintiff must allege that he suffered objectively serious medical needs and that the defendants knew of, but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted). A prisoner may show a deliberate indifference through an intentional delay in or denial of access to medical care. *Estelle,* 429 U.S. at 104-05.

- 11 -

Plaintiff complains that he had a diagnosed severe lactose intolerance, as well as diagnosed irritable bowel syndrome, which caused him to lose over thirty (30) pounds while incarcerated at St. Charles County Department of Corrections. He claims that he sought medical attention for these issues from Jane Doe Nurse, Nurse Jandi, as well as Dr. Walker; however, each of these individuals denied him treatment for his irritable bowel syndrome and severe lactose intolerance, including his requests for a non-dairy tray at meals, as well as help with treating a Vitamin D deficiency. The Court finds plaintiff's allegations survive review pursuant to 28 U.S.C. § 1915 and will order the Clerk to issue process on plaintiff's claims for deliberate indifference to his serious medical needs.

Because the Court is issuing process on a Jane Doe defendant, plaintiff shall have thirty (30) days from the date of this Memorandum and Order to provide the Court with Jane Doe Nurse's proper name and address at which she may be served. Plaintiff's failure to do so will result in a dismissal of Jane Doe Nurse from this action, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to defendants Dr. Unknown Walker and Nurse Jandi at the St. Charles Department of Corrections. Defendants are sued in their individual capacities only.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the amended complaint as to defendant Daniel Keen at the St. Charles Department of Corrections. Defendant Keen is sued in his official capacity only.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants Dr. Unknown Walker, Nurse Jandi and Daniel Keen shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that plaintiff shall provide the Court, within thirty (30) days of the date of this Memorandum and Order, the proper name of Jane Doe Nurse and the address at which she may be served. Plaintiff's failure to do so will result in dismissal of this defendant from this action, without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint as to defendant Daniel Keen in his individual capacity because, as to these claims, the amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both. *See* 28 U.S.C. § 1915(e)(2)(B).

An Order of Partial Dismissal shall accompany this Memorandum and Order

Dated this 12th day of January, 2022.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**