**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OSCAR GARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21CV4 JAR |
| | ) | |
| DR. VALERIE WALKER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Dr. Valerie Walker, Nurse Dawn Moses, and Director Daniel Keen's Motions for Summary Judgment. ECF Nos. 79, 82, and 85. Plaintiff Oscar Garner filed his response in opposition to Defendants' Motions. Defendants each filed a reply to Plaintiff's response. This matter is fully briefed and ready for disposition. For the reasons set forth below, the Court will grant each of Defendants' Motions for Summary Judgment.

### Background

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at the St. Charles County Department of Corrections.[1] Plaintiff specifically alleges that he suffers from lactose intolerance, irritable bowel syndrome (IBS), and a Vitamin D deficiency, and that Defendants Dr. Valerie Walker, Nurse Dawn Moses, in their individual capacities, and Director Daniel Keen, in his official capacity,[2] deprived him of the

---

[1] Plaintiff is no longer at SCCDOC and is currently in custody at the Eastern Reception Diagnostic Correctional Center in Bonne Terre, Missouri.

[2] On January 12, 2022, the Court dismissed Plaintiff's claim against Director Keen in his individual capacity. ECF No. 12.

proper medication to treat his medical issues and a medically necessary lactose-free diet in violation of the Eighth Amendment. Plaintiff also contends the SCCDOC has a policy or practice of denying inmates a lactose-free tray when necessary and treatment for lactose intolerance and IBS. He seeks monetary damages and injunctive relief.

Defendants each filed their respective motions, claiming they are entitled to summary judgment on the claims against them in Plaintiff's Amended Complaint on the grounds that there are no genuine issues of material fact, and they are entitled to judgment as a matter of law. Plaintiff filed his response in opposition to Defendants' motions, with his own Statement of Facts, arguing that he has a constitutional right to be served a special diet and treated with his requested medications for his health issues, and that Defendants were deliberately indifferent to his medical needs. The parties each attached exhibits, including affidavits, medical records and portions of deposition testimony, with their respective memoranda. Defendants also attached a Statement of Uncontroverted Material Facts to each of their motions, which Plaintiff responded to and noted his oppositions only as to Nurse Moses and Director Keen. Plaintiff's opposition references his own Statement of Facts, but he did not file a separate response to Dr. Walker's Statement of Uncontroverted Material Facts.

"All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. Loc. R. 4.01(E). The Court acknowledges that Plaintiff sent a letter indicating that he responded to Dr. Walker's Statement of Facts, but the Court ordered him to resend his response on June 28, 2023 and he failed to do so. ECF No. 107. Because Plaintiff did not respond to Dr. Walker's Statement of Uncontroverted Material Facts in accordance with Local Rule 4.01(E), they are deemed admitted. *Turner v. Shinseki*, 2010 WL 2555114, at *2

(E.D. Mo. June 22, 2010) (citing *Deichmann v. Boeing Co*., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999), *aff'd,* 232 F.3d 907 (8th Cir. 2000), *cert. denied,* 531 U.S. 877)). The Court will liberally construe Plaintiff's allegations, but his *pro se* status does not excuse him from responding to Dr. Walker's Facts "with specific factual support for his claims to avoid summary judgment*," Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001), or from complying with Local Rule 4.01(E). *See Peterson v. Corr. Med. Servs*., 2012 WL 4108908, at *1 (E.D. Mo. Sept. 18, 2012). To the extent Plaintiff properly opposed facts as stated by Nurse Moses or Director Keen that are the same or similar to Dr. Walker's facts, the Court will accept those oppositions as compliant.

The Court also finds that a majority of the facts that Plaintiff disputes are either self-serving, conclusory statements or are unsupported by the evidence. Where Plaintiff establishes that a justifiable inference may be drawn in his favor, the Court accepts Plaintiff's version of events as true. However, self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). "The Court therefore does not consider statements...which merely constitute personal opinions as opposed to facts." *Woods v. Wills*, 400 F. Supp. 2d 1145, 1162 n. 7 (E.D. Mo. 2005); *See also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (holding that in response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'").

## Facts

The following facts are taken from Defendants' Statements of Uncontroverted Material Facts [ECF Nos. 81, 84 and 87] and are undisputed, unless otherwise noted:

On October 29, 2020, Plaintiff was booked into the St. Charles County Department of

Corrections (SCCDOC).[3] On October 29, 2020, Plaintiff was seen for a nursing intake evaluation. Plaintiff denied having a primary care provider and said that he had not been seen by a doctor in the past six months. Nursing Intake Assessment, ECF No. 87-7 at pg. 2. He denied that he was currently taking or should be taking any type of prescription medication. *Id.* at pg. 1. The intake form indicates that he is allergic to lactose, but he did not list any reported problems with IBS or Vitamin D deficiency. *Id*. Plaintiff denied any symptoms related to his gastrointestinal and allergic/immunologic systems. *Id.* at pg. 3. During the intake exam, Plaintiff said that he had a history of right knee surgery, and he had recently injured his right knee while playing basketball. *Id.* at pg. 2. The chart documentation states that Plaintiff ambulated with a limp and his right knee was swollen. *Id.*

Inmates at SCCDOC may request to be seen by a nurse or physician by completing a medical request form, contacting medical through the jail's kiosk system or by declaring an emergency at any time and are thereafter seen by medical staff. Plaintiff knew how to make medical requests through SCCDOC's kiosk system, and it is undisputed that each request he made was promptly responded to by the medical staff.

Between October 29, 2020 and December 12, 2020, Plaintiff used the medical request system to make thirty-seven written requests for medical treatment, none of which related to a request for treatment for lactose intolerance, IBS, or vitamin D deficiency. Plaintiff does not dispute this, but alleges that he made a verbal request for treatment for those issues to Nurse Moses in December. However, Plaintiff's medical records during this timeframe do not reflect any of the alleged verbal requests. Plaintiff's Medical Records, ECF No. 87-5.

---

[3] At all times relevant to this action, Plaintiff was an inmate at SCCDOC.

<u>December 15, 2020 Medical Examination with Dr. Walker</u>

On December 12, 2020, Plaintiff filed his first written medical request through the jail's kiosk system for an appointment with a physician regarding treatment and medications for lactose intolerance, IBS, and vitamin D deficiency. A nurse responded to Plaintiff's request stating, "You denied being on any medication during the intake process, however, an appointment has been scheduled for you to discuss your concerns per your request." The nurse requested Plaintiff to fill out a medical release to identify his health care provider in order to verify his medications, but he did not disclose his provider. Plaintiff's 2020 Medical Release, ECF No. 87-22.

On December 15, 2020, Plaintiff was taken to his medical appointment. Prior to his visit with Dr. Walker, Plaintiff alleges that he told Nurse Moses his medications in the waiting area, and she said he could not receive those medications or special diet for IBS and lactose intolerance at SCCDOC. Nurse Moses disputes making this statement. It is undisputed when Plaintiff confronted the nurse after the alleged statements were made, she explained that Plaintiff did not hear everything she said and then he proceeded into his appointment with Dr. Walker. Plaintiff's Deposition, ECF No. 80-5 at pg. 21. The visit with Dr. Walker lasted between ten and fifteen minutes long. The physician examination notes identify the nurse assisting Dr. Walker during the appointment as Deana Sandoval, LPN, but Plaintiff alleges that it was Nurse Moses. Physician Examination Notes, ECF No. 87-9 at pg. 2. Plaintiff reported to Dr. Walker that he injured his knee just a few days before coming to SCCDOC during a basketball game and that the swelling had gone down over several weeks. He also complained of having lactose intolerance since birth and stated that he had a history of vitamin D deficiency. Plaintiff did not make a complaint about weight loss. Dr. Walker physically examined Plaintiff by putting her

5

hands on him and examined his knee and listened to his stomach. Plaintiff's vital signs were normal, he was noted to be ambulating normally, his right knee was slightly swollen but exhibited a normal range of motion, and his knee injury was noted to be improving. The physician examination notes reflect that Plaintiff also stated that he had been taking tramadol and Phenergan for his right knee injury prior to incarceration and that Tylenol was not helping his pain. *Id.* Plaintiff disputes he said his medications were for his right knee injury. Despite Plaintiff becoming aggressive, Dr. Walker spoke with Plaintiff for several minutes about his medical history, spoke with him about his symptoms and complaints, completed a physical assessment, and developed a plan of care, which included use of an ace bandage for his knee, an extra blanket for knee elevation and a shower chair, and counseled him on avoidance of food with lactose. *Id.* at pg. 2.

Dr. Walker did not prescribe a special diet because he did not demonstrate that he needed additional medical treatment for lactose intolerance other than instructions to avoid foods which contained lactose. Declaration of Dr. Walker, ECF No. 84-1 at ¶ 14-15. It is undisputed that Dr. Walker had the authority at SCCDOC to prescribe therapeutic diets but did not prescribe Plaintiff a lactose-free diet. Plaintiff's Response to Director Keen's Statement of Material Facts, ECF No. 94 at pg. 6. Dr. Walker also did not diagnose Plaintiff with IBS or a vitamin D deficiency because he did not present any of the signs and symptoms associated with either and therefore, did not require medical treatment at that time. Declaration of Dr. Walker, ECF No. 84-1 at ¶ 15-16. This appointment was Dr. Walker's only interaction with Plaintiff during his incarceration at SCCDOC.

Dr. Walker's expert, Dr. Grant Phillips, M.D., is a board-certified family practice physician whose clinical practice focuses primarily on correctional medicine. Expert Witness

Report by Dr. Phillips, ECF No. 84-4 at pg. 1. Dr. Phillips's opined that based on Dr. Walker's sole interaction with Plaintiff on December 15, 2020, she appropriately assessed Plaintiff and ordered treatment and accommodations for him based on his clinical presentation. *Id.* at pg. 13. Dr. Phillips also opined that according to UpToDate, an evidence-based online resource that is widely utilized by health professionals, it is recommended that patients with symptomatic lactose malabsorption should be advised that complete elimination of dietary lactose is not required and that restriction of their intake of lactose is often sufficient to treat symptoms of lactose intolerance. *Id.* at pg. 11.

Following his visit with Dr. Walker on December 15, 2020, Plaintiff continued to file several medical requests complaining that the nurses were ignoring doctor's orders, he was being denied Tramadol, Phenergan, Reguloid, hemorrhoid ointment, and a lactose-free diet and that he needed a blood test to evaluate his vitamin D deficiency. The medical staff responded to each of Plaintiff's requests and repeatedly explained he had just been seen by Dr. Walker who did not identify a vitamin D deficiency, diagnose IBS or prescribe those medications based on his physical examination. He was further advised to provide any new signs or symptoms he was having. He was also told several times that he could purchase multivitamins from the commissary, to avoid lactose as Dr. Walker counseled him and that food intolerances for lactose were not honored at SCCDOC.

<u>December 20 and 22, 2020 Communications between Plaintiff and Nurse Moses</u>

On December 20, 2020, Plaintiff completed a written medical request stating that he had received a lactose-free diet while being housed in the Justice Center in St. Louis, Missouri. On the same day, Nurse Moses responded, "When discussing this with the Doctor you stated you had tried all the medications for IBS (Irritable Bowel Syndrome) and did not want medications.

We can treat the sx (symptoms) of IBS once they have been verified. St. Charles County Dept of Corrections does not have a lactose free diet. We do not honor food intolerances or preferences. If you choose to consume lactose and have sx (symptoms), we can treat those as well. We practice evidence-based medicine at this facility. What sx (symptoms) are you having that you feel are related to Vitamin D deficiency? Please resubmit if you having specific sx (symptoms) that need to be evaluated and treated."

On December 23, 2020, Nurse Moses responded to a written medical request made by Plaintiff the day prior regarding medication for IBS and lactose intolerance. When she asked him to identify the medications that he had taken for his IBS, he provided no written response and closed the request on December 23, 2020 at 7:08 P.M. Plaintiff's December 22, 2020 Medical Request, ECF No. 87-15. Plaintiff alleges he verbally told Nurse Moses his medications. That same date, Plaintiff made a second written medical request about getting his medications, and a different nurse asked him to identity the health care provider who prescribed the requested medications to him for verification. It is undisputed that Plaintiff did not respond to the second request. Plaintiff's Response to Nurse Moses's Statement of Material Facts, ECF No. 92 at pg. 2. This was the second time Plaintiff did not respond to medical staff's request to provide his health care provider in order to verify his alleged medications. Plaintiff's 2020 Medical Release, ECF No. 87-22.

<u>Plaintiff's Weight Checks</u>

On January 12, 2021, Plaintiff submitted a medical request indicating that he was losing weight. Plaintiff alleges that he lost over thirty pounds since his intake into SCCDOC. Nurse Moses advised that he would be placed on weight checks, and those weight checks began within two days of his request. On January 14, 2021, Plaintiff's weight was checked, and he weighed

159 pounds with a body mass index (BMI) calculated as 22.90. Plaintiff's Medical Records, ECF No. 84-6.

On January 18, 2021, Plaintiff completed a written medical request stating that he had spoken with a food service staff member and was told that if a non-dairy diet was prescribed, he would be provided with this diet. On the same day, a response from medical staff stated, "As previously advised, lactose intolerance is not honored here. We are monitoring your weight. If an issue is noted after several readings are made available, then we will re-evaluate the situation."

Plaintiff's weight and BMI continued to be checked regularly and were documented in his medical records as follows: February 17, 2021, 158 pounds/BMI 22.43; March 10, 2021, 160 pounds/BMI 22.71; April 21, 2021, 162 pounds/BMI 23.0; September 23, 2021, 158 pounds/BMI 22.43; November 9, 2021, 161 pounds/BMI 22.86; and December 22, 2021, 165/BMI 23.42 *Id.* On October 5, 2021, Plaintiff refused a weight and vitals check. *Id.*

<u>January 27, 2021 Medical Care Refusal</u>

On January 22, 2021, Plaintiff completed a written medical request stating that he couldn't eat his food, but was forced to eat it to not starve. He complained of being in constant pain, having severe lactose intolerance, and that he needed vitamin D supplements. He was taken to a nurse visit to address these symptoms, but refused a medical examination after his vitals were taken. A refusal form dated January 27, 2021 and signed by Plaintiff is documented in his medical records and states that Plaintiff refused a nurse visit for IBS and lactose intolerance. Plaintiff's January 27, 2021 Refusal of Medical Care, ECF No. 87-25. Plaintiff's reason for the refusal is documented as, "[B]ecause they already stated they can't give me anything." *Id.*

The next day, Plaintiff completed a written medical request for a special lactose-free diet. Medical staff responded shortly after and stated, "You were brought to medical for evaluation

yesterday and would not allow us to examine you nor discuss this matter with you. You signed a refusal. The only thing you allowed was your vitals to be obtained. You must be further evaluated before any changes will be made."

<u>February 8, 2021 Medical Care Refusal</u>

On February 4, 2021, Plaintiff completed a written medical request regarding pain from lactose intolerance and IBS and that he was being denied a medically necessary diet. On February 5, 2021, a response from medical staff stated, "You refused to see the medical staff. MVI (Multivitamins) are available on commissary now as previously discussed. Please resubmit your request if you would like to be seen by Medical."

On February 7, 2021, Plaintiff completed a written medical request asking if he was going to be allowed the medical diet for his lactose intolerance. That same date, medical staff responded, "SCCDOC (St. Charles County Department of Corrections) does not have a lactose free diet. It is an intolerance, not an allergy. Therefore, per our policies and guidelines, food intolerances are not honored. Medical will tx (treat) sx (symptoms) that are evidence based. Should you want to be evaluated for pain and any other sx (symptoms), please resubmit a request for a nurse sick call." On February 7, 2021, Plaintiff completed an additional written medical request asking about treatment for lactose intolerance. That same date, Nurse Moses stated, "This has been asked and answered. We do not have a lactose free diet. If you need to be treated for the sx (symptoms) of lactose intolerance, please submit a sick call request."

On February 8, 2021, Plaintiff was brought to the medical clinic for a nurse sick call visit due to his complaints of pain due to IBS and vitamin D deficiency. According to the nurse's notes, Plaintiff stated that, "I don't drink milk so my vitamin D is low and I've seen a specialist." Medical Care Refusal Notes, ECF No. 87-28 at pg. 1. The nurse then asked for specific

symptoms and the location of the pain, so that he may be treated. *Id.* Plaintiff then stated, "I'm good" and walked out of the clinic, then was escorted back to his housing unit. *Id.* A refusal form signed by Plaintiff, dated February 8, 2021, is documented in his medical records and states that Plaintiff refused a nurse visit for "[p]ain and symptoms assessment in nurse sick call." Plaintiff's February 8, 2021 Refusal of Medical Care, ECF No. 87-27. That same date, Plaintiff completed a written medical request stating that he was still having health problems, lactose intolerance and IBS with vitamin D deficiency issues. Medical staff responded, "You were brought to nurse sick call and refused to be evaluated. If you are brought to medical and evaluated, only your sx (symptoms) will be treated. There will be a $5 charge for sick call."

<u>Plaintiff's February 11-March 9, 2021 Medical Requests for IBS and Lactose Intolerance</u>

After Plaintiff completed written medical requests on February 11 and 15, 2021 that he was still in pain regarding severe lactose intolerance and IBS and that he needed a special diet, medical staff responded, "You have been in medical at least twice and refused medical evaluation. Medical has explained in DETAIL that there is no medical diet for lactose intolerance. If you are experiencing sx (symptoms) such as constipation or diarrhea or pain, those issues can be treated. Please resubmit a request should you be experiencing those sx (symptoms) and will allow medical to evaluate/treat you based on medical findings."

On February 28, 2021, Plaintiff completed a written medical request stating that he was still having lactose intolerance and IBS with no lactose-free diet. On March 1, 2021, medical staff explained, "You have placed this request multiple times. We have tried to bring you up to medical for further evaluation. You refuse to be seen in sick call. No treatment will be given without an evaluation. Lactose intolerance is not honored care here. You have been previously advised multiple times regarding this matter. If you would like to be seen in sick call to address

11

symptoms you are having and possibly meds to help with those symptoms then please resubmit. If you decline to be seen in sick call then this is a mute point/request."

On March 5, 2021, Plaintiff completed a written medical request stating that he was still in pain and that he needed a medical lactose-free diet. On the same day, a response medical staff stated, "This has been asked and answered. If you need to be treated for pain, please submit a request for nurse sick call. There is NO such thing as a dairy-free diet at SCC DOC (St. Charles County Department of Corrections)."

On March 9, 2021, Plaintiff sent his last written medical request regarding a lactose-free diet and pain due to IBS, lactose intolerance, and a vitamin D deficiency. Plaintiff's March 9, 2021 Medical Request, ECF No. 87-14. Plaintiff does not dispute that when he placed his written requests for medical care, SCCDOC medical staff promptly responded to his requests. Plaintiff's Response to Director Keen's Statement of Material Facts, ECF No. 94 at pg. 4. Plaintiff remained in SCCDOC custody until March 10, 2022. Plaintiff does not dispute that his medical conditions, lactose intolerance, IBS, and vitamin D deficiency were not obvious in that someone could identify them just by looking at the person. *Id.* at pg. 4. Plaintiff further acknowledged he was "quite sure that a nurse can't override a doctor." Plaintiff's Deposition, ECF No. 80-5 at pg. 16

Plaintiff admits during his time at SCCDOC, he did not know any other inmate with lactose intolerance, IBS or vitamin D deficiency. Plaintiff's Response to Director Keen's Statement of Material Facts, ECF No. 94 at 9. It is also undisputed, in addition to the two instances described above, that Plaintiff refused medical care several times throughout his incarceration at SCCDOC for various reasons. Plaintiff's Medical Records, ECF No. 84-6. For instance, on November 10, 2020, Plaintiff refused to uncover and get out of bed for the medical staff, verbally refused Tylenol,

an ace wrap, and temperature checks, and stated, "Tell medical to leave me alone, I refuse all medical." *Id.* at pg. 19.

<u>Relevant SCCDOC Policies and Procedures</u>

Director Daniel Keen is responsible for creating, amending, and adopting all Policies and Procedures for the SCCDOC. SCCDOC has adopted a department-wide policy to ensure that inmates with serious medical needs are treated while in SCCDOC's custody. The SCCDOC policy related to medical care, Policy 1406: Access to Care, states "This facility ensures a system for timely access to care for inmates with serious medical, dental, and mental health care needs." Access to Care Policy, ECF No. 87-2. SCCDOC maintains an electronic medical record system to document an inmate's requests for medical treatment and the treatment medical staff have provided to inmates. Through this system, inmates may place written requests for treatment, and medical staff is required to promptly respond those requests. SCCDOC's medical staff are trained and required to document in the electronic medical record system any verbal or electronic requests for treatment, so that the inmate's request can be addressed.

SCCDOC has also adopted a department-wide policy allowing therapeutic diets for inmates who have been prescribed a therapeutic diet as a result of a diagnosed medical condition. SCCDOC's policy regarding therapeutic diets is set out in Policy 1503: Prescribed Therapeutic Diets, and it guides SCCDOC staff on how to proceed with diet requests. Prescribed Therapeutic Diets Policy, ECF No. 87-3. SCCDOC Policy 1503 requires therapeutic diet meals to be prescribed by a qualified health care professional, such as a physician. *Id.* SCCDOC contracted with Dr. Valerie Walker's agency and Nurse Dawn Moses's agency for them to provide medical care to SCCDOC's inmates.

<u>Dr. Valerie Walker</u>

Dr. Walker at all times relevant to this matter was employed by USA Medical as a contracted PRN physician at SCCDOC and provided medical care and treatment to the inmates. As a PRN site physician, if a patient was brought to see Dr. Walker, she made her own assessment and treatment decisions about the inmates under her care, considering the issues attendant to correctional facilities. SCCDOC inmates were not routinely seen by Dr. Walker for "well" visits or routine exams unless they put in a sick call request or had a medical emergency that required examination. As an outside contracted PRN site physician, Dr. Walker was not able to change the SCCDOC policies regarding dietary needs but was required to abide by the St. Charles County Department policies and procedures.

<u>Plaintiff's Conclusory, Self-Serving Allegations</u>

To the extent the Court liberally construes Plaintiff's statements in his filings as factual allegations, they are either conclusory or self-serving, or do not create a genuine issue of material fact. For instance, Plaintiff insists Nurse Moses was the nurse assisting Dr. Walker during his appointment on December 20, 2020, even though the medical examination notes document that the nurse was LPN Sandoval. He further alleges that Nurse Moses told him there was no treatment or special diet for IBS and lactose intolerance at SCCDOC prior to his visit with Dr. Walker. His only evidence of this is his own affidavit and statements that he explained to Nurse Moses what Dr. Walker could and could not do, which are self-serving allegations. Plaintiff attempts to controvert that his alleged medications for IBS, Tramadol and Phenergan are not general treatment for those ailments by responding, "no evidence to back this up" without any evidentiary support. Even with an application of a "plaintiff-friendly" version of the facts, Plaintiff still does not create a factual dispute to defeat summary judgment.

14

**Legal Standard**

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 536 F.3d 813, 818 (8th Cir. 2008). "The mere existence of a scintilla of evidence in

support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005).

## Discussion

Defendants argue that they are entitled to summary judgment on Plaintiff's claims that he was deprived of the proper medication to treat his medical issues and a lactose-free diet in violation of the Eighth Amendment because the undisputed evidence shows that Defendants were not deliberately indifferent to his alleged serious medical needs involving his lactose intolerance, IBS, or vitamin D deficiency. Director Keen also argues that he is entitled to judgment as a matter of law on Plaintiff's allegations that the SCCDOC has a policy or practice of denying inmates a lactose-free diet when necessary and treatment for lactose intolerance because he has failed to establish that a constitutional violation occurred.

Conditions of Confinement

The Eighth Amendment requires prison officials to provide humane conditions of confinement to its inmates, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), including nutritionally adequate food. *Simmons v. Cook*, 154 F.3d 805 (8th Cir. 1998); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (prisoners have a right to nutritionally adequate diet); *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) (*per curiam*) (prisoner has constitutional right to adequate diet); Cody v. CBM Corr. Food Servs., 250 F. App'x 763, 765 (8th Cir. 2007) (same); *Davis v. Missouri*, 389 F. Appx 579 (8th Cir. 2010) (same).

To state an Eighth Amendment claim challenging conditions of confinement, an inmate must satisfy both an objective and subjective test. He must allege facts that would, if proven, establish that (1) the deprivation of his right was "objectively, sufficiently serious," resulting "in

16

the denial of the minimal civilized measure of life's necessities," and (2) that prison officials were deliberately indifferent to "an excessive risk to [his] health or safety," meaning that the officials actually knew of and disregarded the risk. *Farmer*, 511 U.S. at 834, 837; *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995); *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993).

The failure to provide adequate nutrition may qualify as a deliberate indifference that violates the Eighth Amendment. *Wishon*, 978 F.2d at 449. However, a prisoner must show that "... the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Id.*; *see also, Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (suggesting that to state Eighth Amendment claim inmate must allege "he lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet"), cited with approval in *Davis*, 389 F. Appx. 579. Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).

Here, Plaintiff has not presented any evidence that he was provided a nutritionally inadequate diet, and that he suffered adverse health consequences resulting from being denied a special lactose-free diet. First, a lactose-free diet here is not a medical necessity since Plaintiff can simply remove dairy items from his food tray himself or choose not to eat them. Plaintiff does not offer any evidence indicating, for example, that he was unable to determine which items contain lactose, or that he was not provided with enough lactose-free items to maintain an adequate diet. He was seen by medical staff for his lactose intolerance symptoms when requested and was instructed to avoid foods that contained lactose and caused him discomfort. Plaintiff argues that he lost over thirty pounds since his intake into SCCDOC due to being denied a special lactose-free diet, but based on his recorded weights, he had no significant weight loss and

17

in fact gained weight. Nurse Moses promptly put him on weight checks after he disclosed weight loss on January 12, 2021, and he weighed 159 pounds during his first weight check on January 14, 2021. Plaintiff's Medical Records, ECF No. 84-6. By April 21, 2021, his weight was 162 pounds. *Id.* On December 22, 2021, he weighed 165 pounds. *Id.* His medical records show no complaints of lactose intolerance or IBS prior to late December 2020 or after March 9, 2020. He was in SCCDOC custody for another full year after his last complaint.

To the extent Plaintiff has suffered from IBS, vitamin D deficiency, stomach pain or other lactose intolerance symptoms when he chose to consume dairy products, he has provided no evidence that his avoidance of these foods without receiving a special diet has caused him to suffer any harm. Despite his preference for a lactose-free menu, Plaintiff has no cognizable constitutional right to a specific type of meal. *Burgin*, 899 F.2d at 734–35. In light of this evidence, Plaintiff fails to establish that the denial of a lactose-free diet prevented him from receiving safe or adequate nutrition in violation of the Eighth Amendment.

Further, Plaintiff does not allege facts sufficient to show that Defendants willfully deprived Plaintiff of food or acted with deliberate indifference to his dietary needs. Instead, the record demonstrates, and Plaintiff even admits, that when he placed his written requests for medical care, SCCDOC medical staff promptly responded to his requests. Plaintiff's Response to Director Keen's Statement of Material Facts, ECF No. 94 at pg. 4. Plaintiff saw Dr. Walker on December 20, 2020, who spoke with him about his symptoms and complaints, completed a physical assessment and counseled him on avoiding foods with lactose. Plaintiff does not dispute that Dr. Walker had the authority to prescribe therapeutic diets but chose not to after examining him. *Id.* at pg. 6. The evidence is clear that Dr. Walker did not prescribe a special diet because Plaintiff did not demonstrate that he needed additional medical treatment for lactose intolerance

18

other than instructions to avoid foods which contained lactose. Declaration of Dr. Walker, ECF No. 84-1 at ¶ 14-16. After his appointment with Dr. Walker, Plaintiff made several more medical requests for a lactose-free diet. Medical staff, including Nurse Moses, repeatedly explained that he had just been seen by Dr. Walker who did not prescribe a lactose-free diet based on his examination and to provide any new signs or symptoms he was having. He was also advised several times to avoid lactose as Dr. Walker counseled him. Plaintiff has provided no evidence that Nurse Moses, or any other nurse he had contact with, had the authority to prescribe Plaintiff a lactose-free diet after Dr. Walker found it was not medically necessary. He even acknowledged he was "quite sure that a nurse can't override a doctor." Deposition of Plaintiff, ECF No. 80-5 at pg. 16.  Although the Court understands Nurse Moses and other nurses told him that a lactose-free diet was not available at SCCDOC, the therapeutic diet meals policy clearly allows for a medical diet *only* if it is prescribed by a qualified health care professional, such as a physician. Prescribed Therapeutic Diets Policy, ECF No. 87-3. Here, Plaintiff was not prescribed a lactose-free diet, and medical staff responded accordingly.

In sum, there is no genuine dispute as to any material fact regarding this claim. No reasonable fact-finder could conclude that the denial of a lactose-free diet prevented Plaintiff from receiving safe or adequate nutrition or that Defendants acted with indifference to his dietary needs. Thus, Defendants are entitled to summary judgment as a matter of law on this claim.

Denial of Medications

It is well established that the deliberate indifference to the serious medical needs of prisoners[4] violates the right to due process. *Barton v. Taber,* 908 F.3d 1119, 1123 (8th Cir.

---

[4] Plaintiff was initially a pretrial detainee at SCCDOC and was "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *See also, Jackson v. Buckman*, 756 F.3d 1060, 1065

2018). "[D]eliberate indifference is a difficult standard to meet." *Spencer v. Knapheide Truck Equip., Co.,* 183 F.3d 902, 906 (8th Cir. 1999). "Deliberate indifference is more than negligence, more even than gross negligence. It may be found where medical care is so inappropriate as to evidence intentional maltreatment." *Johnson*, 929 F.3d at 575 (cleaned up); *See also, Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011) ("The level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness."). To succeed on a deliberate-indifference claim, Plaintiff must "clear a substantial evidentiary threshold." *Id.* at 576 (quoting *Nelson v. Shuffman*, 603 F.3d 439, 448–49 (8th Cir. 2010)). To establish deliberate indifference, Plaintiff must show (1) that he suffered from an objectively serious medical need, and (2) that the jail officials knew of, but deliberately disregarded that need. *Hancock v. Arnott,* 39 F.4th 482, 486 (8th Cir. 2022) (citing *Barton*, 908 F.3d at 1124). "Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Davis v. Buchanan, Cnty.,* 11 F.4th 604, 623–24 (8th Cir. 2021) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). It is undisputed by the evidence presented that Plaintiff's medical conditions were not serious medical needs. Plaintiff admits his lactose intolerance, IBS and vitamin D deficiency were not obviously recognized. Plaintiff's Response to Director Keen's Statement of Material Facts, ECF No. 94 at pg. 4. It is

---

(8th Cir. 2014) (applying the Eighth Amendment deliberate-indifference standard for inmates' claims to pretrial detainee's claim under the Fourteenth Amendment).

also undisputed that his IBS, lactose intolerance and vitamin D deficiency were not diagnosed by Dr. Walker on December 15, 2020. *Id.* at 6. Plaintiff has produced no evidence that any other physician diagnosed him with these medical conditions and prescribed medications, as he failed to provide medical staff with his health care providers when requested for verification.

Even if Plaintiff could show that his medical conditions were serious medical needs, he cannot show that either Defendants were deliberately indifferent to those needs by not prescribing his requested medications. "Under the subjective prong, to show deliberate indifference, the official must know of and disregard the inmate's serious medical need." *Davis*, 11 F.4th at 624 (cleaned up). "[T]he evidence must show that [Defendant] recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015), quoting *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (emphasis in original). "Generally, the actor manifests deliberate indifference by intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Davis,* 11 F.4th at 624. However, a detainee's mere disagreement with a medical professional's treatment decisions, alone, is insufficient. *See Barr v. Pearson*, 909 F.3d 919, 921–22 (8th Cir. 2018).

Here, Plaintiff contends that Defendants were deliberately indifferent by not giving him a vitamin D supplement and medications for his IBS and lactose intolerance, namely Tramadol, Phenergan, Reguloid, and a hemorrhoid ointment. However, the undisputed evidence shows that Dr. Walker evaluated Plaintiff as requested on December 15, 2020, and she did not diagnose Plaintiff with IBS or a vitamin D deficiency because he did not present any of the signs and symptoms associated with either and therefore, did not require medical treatment at that time. Declaration of Dr. Walker, ECF No. 84-1 at ¶¶ 14-16. In fact, the examination notes show that

Plaintiff told Dr. Walker that he had been taking Tramadol and Phenergan for his right knee injury, not for his lactose intolerance. Examination Notes, ECF No. 87-9 at pg. 2. After the examination, Dr. Walker gave Plaintiff a treatment plan for both his knee and lactose intolerance, counseling him on avoiding lactose. The evidence clearly shows that based on her thorough assessment and physical examination of Plaintiff, Dr. Walker did not diagnose him with IBS, a vitamin D deficiency or prescribe medications to him because he did not present signs or symptoms to warrant such. Declaration of Dr. Walker, ECF No. 84-1 at ¶ 14-16. Dr. Walker's expert, Dr. Phillips, opined based on his assessment of Dr. Walker's sole interaction with Plaintiff on December 15, 2020, she appropriately assessed Plaintiff and ordered treatment and accommodations for him based on his clinical presentation. ECF No. 84-4, Exhibit D at pg. 11. Dr. Phillips also opined that according to UpToDate, an evidence-based online resource that is widely utilized by health professionals, it is recommended that patients with symptomatic lactose malabsorption should be advised that complete elimination of dietary lactose is not required and that restriction of their intake of lactose is often sufficient to treat symptoms of lactose intolerance, just as Dr. Walker and medical staff counseled him to do. *Id.* at pg. 11. Plaintiff offers no evidence to refute Dr. Phillips's opinion.

The evidence also shows that when Plaintiff first requested an appointment and medications for his lactose intolerance on December 12, 2020, a nurse explained to Plaintiff that he denied being on any medication during the intake process and requested him to fill out a medical release to identify his health care provider to verify his medications. Plaintiff filled out the form, but he did not disclose his provider. 2020 Medical Form, ECF No. 87-22. He was asked two more times to provide his provider by Nurse Moses and other medical staff, so they could verify his medications, but he did not respond.

22

After his appointment with Dr. Walker, Plaintiff made several more medical requests regarding medications for IBS, lactose intolerance and vitamin D deficiency. Plaintiff does not dispute that when he placed his written requests for medical care, SCCDOC medical staff promptly responded to his requests. Plaintiff's Response to Director Keen's Statement of Material Facts, ECF No. 94 at pg. 4. Medical staff, including Nurse Moses, repeatedly explained that he had just been seen by Dr. Walker who did not diagnose IBS, identify a vitamin D deficiency or prescribe medications, and to provide any new signs or symptoms he was having. He was seen by medical staff when requested and actually refused medical treatment twice for treatment related to his lactose intolerance. He was also advised several times that he could purchase multivitamins from the commissary and to avoid lactose as Dr. Walker counseled him.

Although Plaintiff may disagree with their treatment decisions, he has not raised a genuine dispute of material fact that he had an objectively serious medical need or that, even assuming *arguendo* he had such a need, it was deliberately disregarded by Defendants. *See Barr*, 909 F.3d at 921–22 (holding that Plaintiff's disagreement with a medical professional's treatment decisions, alone, is insufficient to defeat summary judgment).

### *Monell* Liability

Section 1983 of 42 U.S.C. creates a cause of action for persons whose constitutional rights are violated in the execution of governmental policy, custom, or official action. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Under certain circumstances, liability can lie for constitutional violations under § 1983 on the basis that the municipality failed to train its employees. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

"A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Bechtel v. City of*

*Belton*, 250 F.3d 1157, 1160 (8th Cir. 2001) (alteration omitted) (quoting *Mettler v. Whitledge,*

165 F.3d 1197, 1204 (8th Cir. 1999)). An actionable custom requires:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking official after notice to the officials of that misconduct; and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.,* 901 F.2d 642, 646 (8th Cir. 1990). The

plaintiff must "show[] that the [supervising defendant] had notice that the training procedures

and supervision were inadequate and likely to result in a constitutional violation." *Tlamka v.*

*Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th

Cir. 1996)).

As Plaintiff did not establish that any individual defendant committed a constitutional

violation, summary judgment is proper on the official capacity claim against Director Keen. *See*

*Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). Even if there was a constitutional violation,

Plaintiff fails to identify any policy, custom, or official action that caused him an actionable

injury. The undisputed record shows that he continued to receive care for his medical issues

while incarcerated and that medical staff promptly responded to his requests for medical needs.

Although Plaintiff did not receive his preferred medications and special diet, the instant facts

cannot support a *Monell* claim. *See Meuir v. Greene Cnty. Jail Emps*., 487 F.3d 1115, 1118–19

(8th Cir. 2007) ("[A] prisoner's mere difference of opinion over matters of expert medical

judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."

(alteration in original) (quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992)). Plaintiff

has failed to establish that SCCDOC medical staff showed deliberate indifference on the part of

Defendant Keen. The evidence indicates that at all times, SCCDOC medical staff responded timely and reasonably to his medical complaints.

 Plaintiff's argument also fails because he cannot establish a continuing, widespread, persistent pattern of unconstitutional misconduct by SCCDOC. Plaintiff admits during his time at SCCDOC, he did not know any other inmate with lactose intolerance, IBS or a vitamin D deficiency. Deposition of Plaintiff, ECF No. 80-5 at pg. 9. Plaintiff has only pointed to his case and has neither alleged nor proven other instances of alleged unconstitutional misconduct to create a genuine issue of material fact as to the existence of a continuing, widespread, persistent pattern by SCCDOC. No dispute of material fact remains. As such, Director Keen is entitled to judgment as a matter of law on this claim.

**Conclusion**

For the reasons set forth above, Defendants are entitled to summary judgment on all claims against them in Plaintiff's Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Dr. Valerie Walker, Nurse Dawn Moses, and Director Daniel Keen's Motions for Summary Judgment [ECF Nos. 79, 82, and 85] are **GRANTED**, and this case is dismissed with prejudice as to these remaining Defendants.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 19th day of March, 2024.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**